KENNETH P. and GLORIA A. POHL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ORTHOPEDIC RECONSTRUCTIVE SURGERY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pohl v. Commissioner
Docket Nos. 19543-86, 19544-86
United States Tax Court
T.C. Memo 1990-298; 1990 Tax Ct. Memo LEXIS 316; 59 T.C.M. (CCH) 887; T.C.M. (RIA) 90298; June 18, 1990, Filed *316 Decisions will be entered under Rule 155. James H. Stethem and Gary E. Friedhoff, for the petitioners. Ronald T. Jordan, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in petitioners' Federal income tax: Docket No.
Year
Deficiency
Kenneth P. and Gloria A. Pohl
19543-86
1979
$  8,936.86
1980
16,155.47
1981
75,455.41
Orthopedic Reconstructive
Surgery, Inc.
19544-86
* 1982
6,249.00
After concessions, the issues for decision are: (1) Whether Kenneth Pohl received constructive dividends as determined by respondent from Far Oaks Orthopedists, Inc., in taxable years 1979, 1980, and 1981, and from Orthopedic Reconstructive Surgery, Inc., in taxable year 1981; (2) Whether Kenneth and Gloria Pohl are entitled to employee business expense deductions in excess of the amounts determined by respondent for taxable years 1980 and 1981; (3) Whether Orthopedic Reconstructive Surgery, Inc., is entitled to business expense deductions in excess of the amount determined by respondent for its taxable year ending March 31, 1982; (4) Whether Kenneth and Gloria Pohl failed to report $ 895.22 of interest income in taxable *317 year 1981; (5) Whether Kenneth and Gloria Pohl are entitled to $ 17,924.70 of investment tax credit under section 38 [1] for taxable year 1981; and (6) Whether Orthopedic Reconstructive Surgery, Inc., is entitled to $ 1,024 of investment tax credit under section 38 for its taxable year ending March 31, 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners (Kenneth P. and Gloria A. Pohl will hereinafter be referred to collectively as "petitioners" and individually as "petitioner" and "Mrs. Pohl") resided in Dayton, Ohio, when they filed their petition. Orthopedic Reconstructive Surgery, Inc. (hereinafter referred to as "ORS"), petitioner's wholly owned corporation, maintained its principal business office in Dayton, Ohio, when its petition was filed. I. CONSTRUCTIVE DIVIDENDS AND DISALLOWED DEDUCTIONS
A. Constructive Dividends From Far Oaks Orthopedists, Inc.
During taxable *318 years 1979, 1980, and until March 8, 1981, petitioner, an orthopedic surgeon, was an employee and shareholder of Far Oaks Orthopedists, Inc. (hereinafter referred to as "Far Oaks"), a professional corporation located in Dayton, Ohio. Far Oaks employed six physicians. Far Oaks reimbursed its physicians for any claimed business expenses which they paid. Reimbursements were made on a monthly basis by submitting receipts to verify the expenditures.
Physicians were not required to verify the business purpose of the expenses. The total amount a physician could be reimbursed was limited by a formula. At the close of each year, Far Oaks computed the average total reimbursement per physician. Amounts reimbursed to a physician over the average reimbursement were considered compensation paid to the physician. If a physician claimed less than the average reimbursement, the difference was paid to him as a dividend. The average reimbursement, or the claimed reimbursement, if less, was claimed by Far Oaks as a business expense deduction. Far Oaks would also pay an expense directly, rather than through a reimbursement, if a physician so requested. Respondent determined that the following reimbursements *319 and payments by Far Oaks in 1979, 1980, and 1981 were constructive dividends to petitioner: Reimbursements and Payments to Petitioner during 1979
Amount Determined
Reimbursement
To Be
Item
Date
or Payment
Constructive Dividend
Airfare to Boyne Highlands, MI
for petitioners and children
1/26/79
$  1,383.62
$  691.81         King Cole Restaurant
--   162.03
162.03         Airfare to San Francisco
for petitioners
3/6/79
1,561.38
780.69         Car rental in
San Francisco
3/9/79
117.55
58.78         Dayton Racquet Club
--   1,145.57
1,145.57         Airfare to Snow Mass (via
Denver) for petitioners
4/6/79
1,174.59
587.30         Meals and misc. expenses
in Snow Mass
4/6/79
532.07
532.07         Crestwood Lodge
--   100.00
100.00         The Inn
--   32.50
32.50         Dayton Country Club
--   2,626.88
1,745.44         Traffic fine
--   20.00
20.00         Parties (2) hosted by petitioners
at their residence
--   4,059.00
4,059.00         Telephone charges
--   681.78
556.16         Camera, film, and film
processing
--   530.18
198.81         Automobile expenses
--   5,787.40
4,112.87         Miscellaneous travel and
entertainment expenses
--   470.76
470.76         $ 20,385.31
$ 15,253.79         Reimbursements and Payments to Petitioner during 1980
Amount Determined
Reimbursement
To Be
Item
Date
or Payment
Constructive Dividend
Dayton Country Club
--
$  1,967.38  $  1,967.38        Miami Valley Hospital debut
--
100.00  100.00        Airfare to Snow Mass (via
Denver) for petitioners
2/80
755.50  755.50        Meals in Snow Mass
136.43  136.43        Condominium rental in
Snow Mass
--
1,000.00  1,000.00        Airfare to Snow Mass
(via Denver)
3/80
290.00  290.00        Car rental while in
Snow Mass
554.54  554.54        Meals in Snow Mass
209.75  209.75        Dayton airport parking
--
30.00  30.00        Video camera and video cassette recorder
--
2,416.87  2,416.87        Party hosted by petitioners
at Lake of the Woods Club
--
1,910.36  1,910.36        Dayton Racquet Club
--
358.64  230.61        Airfare to Denver
8/80
472.00  472.00        Wright's Sandwich Shop
--
145.55  145.55        Miscellaneous meals
--
338.12  338.12        Party hosted by petitioners
at their residence
10/80
4,234.89  4,234.89        Hotel expenses in
Chicago
11/80
867.54  289.18        Meals in Chicago
297.38  148.69        Going away parties for nurses
at Kettering Med. Center
--
223.50  223.50        Film and film processing
--
530.18  265.09        Telephone charges
--
470.60  470.60        Automobile expenses
--
11,475.40  5,535.14        Auto insurance
--
657.00  657.00        Miscellaneous travel and
entertainment expenses
--
548.89  548.89        $ 29,990.52  $ 22,930.09        *320 Reimbursements and Payments to Petitioner during 1981
Amount Determined
Reimbursement
To Be
Item
Date
or Payment
Constructive Dividend
Airfare to Las Vegas for
petitioners
1/81
$ 1,248.00  624.00         Wine purchases
--
446.37  446.37         Automobile mileage to
Denver
1/81
480.00  240.00         Meals and lodging
in Denver
1/81
264.00  150.00         Dayton Country Club
--
118.56  118.56         Wright's Sandwich Shop
--
80.09  80.09         Miscellaneous meals
--
69.90  69.90         Telephone charges
--
187.26  187.26         Film and film processing
--
344.68  172.34         Automobile expenses
--
3,830.75  795.77         Miscellaneous travel
and entertainment expenses
--
87.00  87.00         $ 7,156.61  $ 2,971.29         Far Oaks had sufficient earnings and profits during the taxable years at issue to support respondent's determination that these reimbursements and payments were constructive dividends. Because of his dissatisfaction with the level of care patients received at Far Oaks, petitioner decided to open his own office. On March 8, 1981, petitioner terminated his employment with Far Oaks and commenced employment with ORS. Mrs. Pohl, who had not been employed by Far Oaks, served as office manager *321 of ORS. B. Claimed Employee Business Expense Deductions
On their 1980 Federal income tax return petitioners claimed a deduction of $ 4,944.20 for unreimbursed employee business expenses. The $ 4,944.20 in claimed employee business expenses consist of items which had previously been reimbursed to petitioner by Far Oaks but which, on termination of his employment, were set off against petitioner's final compensation. Respondent determined that, because the amount of final compensation which was offset against the expenses was not reported by petitioner as taxable income, petitioner was not entitled to deduct the items as unreimbursed employee business expenses. Expense
Claimed
Disallowed
American Medical Assoc.
$   221.00
$   221.00   Party hosted by petitioners at their
residence in Oct. (partial offset of
$ 4,234.89 reimbursed in 1980)
3,422.45
3,422.45   American Assoc. of Surgeons
129.00
129.00   K. P. Pohl, M.D.
867.54
867.54   Mrs. F. Bains
60.00
60.00   The Leather Shop
37.03
37.03   Mrs. F. Bains
20.00
20.00   Video equipment
187.18
187.18   $ 4,944.20
$ 4,944.20    On their 1981 Federal income tax return petitioners claimed a deduction of $ 8,428 for unreimbursed employee business expenses. Respondent *322 allowed $ 495.24 and disallowed $ 7,932.76 of the claimed deductions: Item
Date
Claimed
Disallowed
Mileage to Aspen
1/6/81
$   563.40
$   563.40  Meals in Aspen
--  800.05
800.05  Mileage to Snow Mass
2/22/81
561.40
561.40  Meals in Snow Mass
--  621.00
621.00  Meals in Snow Mass
3/25/81
1,775.66
1,775.66  Meals, taxis, and parking
while in Denver
5/23/81
355.66
177.83  Meals and taxis
in Boston
5/30/81
355.86
177.93  Meals in Chicago
9/26/81
64.82
64.82  Meals and misc. expenses
in Washington, D.C.
11/14/81
278.96
139.48  Meals in Snow Mass
12/27/81
1,685.82
1,685.82  Misc. meals and expenses
--  1,365.37
1,365.37  $ 8,428.00
$ 7,932.76  C. Deductions Disallowed to ORS and Determined to be Constructive Dividends to Petitioner
On its corporate income tax return for its taxable year ending March 31, 1982, ORS claimed deductions for the following payments, which were disallowed by respondent and determined to be constructive dividends paid to petitioner in taxable year 1981: Amount Determined
To Be
Items
Date
Amount Paid
Constructive Dividend
Airfare to Snow Mass (via Denver)
3/25/81
$    672.00  $    672.00         Meals in Snow Mass
--
335.34  335.34         Dayton Country Club
--
1,883.31  1,883.31         Wright's Sandwich Shop
--
68.01  68.01         Airfare to Wash., D.C.
11/14/81
352.00  176.00         Hotels in Wash., D.C.
--
804.06  402.03         Meals in Wash., D.C.
--
133.96  89.31         Car Rental in Wash., D.C.
--
185.78  61.93         Misc. expenses in Wash., D.C.
--
425.00  212.50         Airfare to Denver
5/23/81
470.00  235.00         Hotel in Denver
--
120.00  40.00         Car rental in Denver
--
682.12  341.06         Airfare to Boston
5/30/81
678.00  339.00         Hotel in Boston
--
588.20  196.07         Meals in Boston
--
62.39  31.34         The Pine Club
--
101.40  101.40         Airfare to Snow Mass (via
Denver) for petitioners,
children, and friend
12/27/81
2,283.77  2,283.77         Going away parties for nurses
at Kettering Med. Center
--
714.00  714.00         Automobile expenses
--
19,304.00  12,193.87         Automobile insurance
--
2,019.00  1,732.00         Miscellaneous reimbursements
--
222.62  222.62         $ 32,104.96  $ 22,330.56         *323 In addition to these payments, between January 1, 1982 and March 31, 1982, ORS paid $ 361.50 to the Dayton Country Club for dues and expenditures and $ 110.75 to the Diner's Club for meal expenses. These payments were disallowed as business expenses to ORS but not charged to petitioner as constructive dividends for 1981 because they were paid during 1982. Furthermore, respondent disallowed $ 4,063.13 of the $ 19,304 claimed deduction for automobile expenses but did not charge petitioner with a constructive dividend for such amount because it was paid between January 1, 1982 and March 31, 1982. Finally, ORS claimed deductions totalling $ 2,456.06 for which no documentation of the expenditure was provided. These deductions were disallowed to ORS, but not charged to petitioner as constructive dividends. ORS had sufficient earnings and profits during the taxable year at issue to support respondent's determination that the payments were constructive dividends.
II. INTEREST INCOME
During the years at issue ORS did not keep a corporate bank account. Petitioner deposited ORS's receipts and paid its expenses from his personal checking account, which earned $ 895.22 of interest during 1981. *324 Neither ORS nor petitioners reported the interest as income on their Federal income tax returns. Respondent determined that the interest is includable in petitioners' gross income. III. INVESTMENT TAX CREDIT
On May 1, 1981, petitioner formed GTC Associates (GTC), a limited partnership. Petitioner, who served as general partner of GTC, owned a 96-percent interest in the partnership. Mrs. Pohl and their children, as limited partners, owned the remaining 4 percent. In 1981 GTC purchased $ 195,024 worth of property. In a lease dated March 3, 1981, GTC leased the property to ORS. With respect to the property which was the subject of the lease, the agreement provides: Subject to the terms and conditions contained in this Lease, Lessor hereby leases to Lessee the Equipment which is described in the Lease Schedules attached hereto and incorporated herein by reference. The parties may add Equipment to be covered by this Lease by completing and executing a Lease Schedule in the form attached hereto.
As to rent payable by ORS as lessee, the lease agreement provides the rent for each item of equipment shall be "as specified on the applicable Lease Schedule." As to the lease term for each *325 item, the lease agreement provides that the term shall be "as specified on the applicable Lease Schedule." The Lease Schedule, which was signed by petitioner on behalf of both GTC and ORS, is blank where it provides for the description of the leased property, the rent payable by ORS, and the length of the lease term. Attached to the lease agreement is a one page document which lists various items of office equipment and provides that the lease terms for the equipment shall be less than 50 percent of its useful life. Almost seven years after the lease was entered into, ORS was still using the property. On their 1981 Federal income tax return, petitioners claimed investment tax credit in the amount of $ 18,151 as their share of the credit to which GTC was entitled. Respondent disallowed $ 17,924.70 of the claimed credit. In 1981 GTC filed an election to pass through to ORS the investment tax credit on property with a fair market value of $ 10,236. The $ 10,236 worth of property is described only as "fixtures" on the election form. Based on GTC's election, ORS claimed investment tax credit in the amount of $ 1,024 on its Federal income tax return for its taxable year ending March *326 21, 1982. Respondent disallowed all of the claimed credit. OPINION I. CONSTRUCTIVE DIVIDENDS AND DISALLOWED DEDUCTIONS
When a corporation pays a nondeductible personal expense of a shareholder, reimburses a shareholder for a nondeductible personal expense, or permits a shareholder to use corporate property for a personal purpose, the shareholder receives a constructive dividend to the extent he receives a personal or economic benefit. Falsetti v. Commissioner, 85 T.C. 332, 356 (1985); Ashby v. Commissioner, 50 T.C. 409, 417 (1968).Respondent's determination that the payments and reimbursements at issue were constructive dividends paid to petitioner is presumptively correct. Petitioners bear the burden of proving either: (1) that the reimbursements and payments at issue are trade or business expenses deductible by Far Oaks or ORS, rather than nondeductible personal expenses of petitioner, or (2) that they do not represent a personal or economic benefit to petitioner. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Because petitioners offered no evidence showing that the payments and reimbursements do not represent personal or economic benefits, we find that they have failed *327 to meet their burden of proof with respect to the second element. We now address whether the payments and reimbursements are deductible business expenses to the corporations of which petitioner was a shareholder. While the constructive dividend rule is complicated where a reimbursing corporation is not before the Court, as is the case with Far Oaks, we proceed as best we can on the record before us. Falsetti v. Commissioner, supra at 357.We will also address whether petitioners are entitled to the employee business expense deductions which they claimed on their 1980 and 1981 Federal income tax returns. A. Travel Expenses
Under section 162(a)(2), a taxpayer is allowed a deduction for ordinary and necessary travel expenses paid while away from home in the pursuit of business. Travel expenses include travel fares, meals, lodging, and expenses incident to travel. Sec. 1.162-2(a), Income Tax Regs. A travel expense otherwise deductible under section 162(a)(2) must also satisfy the substantiation requirements of section 274(d). If a taxpayer travels to a destination and while at the destination engages in both business and personal activities, travel expenses to and from the destination *328 are deductible only if the trip is related primarily to the taxpayer's business. If the trip is primarily personal in nature, the travel expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at the destination. However, expenses while at the destination which are properly allocable to business are deductible even though the travel expenses to and from the destination are not. Sec. 1.162-2(b)(1), Income Tax Regs. Whether a trip is related primarily to the taxpayer's business or is primarily personal in nature depends on the facts and circumstances of each case. Sec. 1.162-2(b)(2), Income Tax Regs.
Where a taxpayer's spouse accompanies him on a business trip, expenses attributable to her are nondeductible unless her presence on the trip serves a bona fide business purpose. Her performance of some incidental service is insufficient to qualify the expenses attributable to her as deductible business expenses. The same rules apply to other members of the taxpayer's family who accompany him on a trip. Sec. 1.162-2(c), Income Tax Regs.
Most of the travel expenses at issue are attributable to trips during which petitioner attended *329 medical seminars and conventions. Mrs. Pohl generally accompanied petitioner on the trips, as did, on occasion, their children. The travel expenses disallowed by respondent as not qualifying under section 162(a)(2) can be grouped into two categories: (1) trips which respondent determined neither petitioner nor his family members took primarily for business purposes, and for which respondent disallowed the expenses attributable to petitioner and to the family members, and (2) trips which respondent determined petitioner took primarily for business purposes, but his family members took primarily for personal reasons. For these trips respondent allowed a deduction for the expenses attributable to petitioner, but not for the expenses attributable to the family members. With respect to the first category, we find that respondent correctly determined that neither petitioner nor his family took these trips primarily for business reasons. In addition, we find that petitioners have failed to prove which, if any, of the expenses disallowed by respondent were properly allocable to business. We therefore sustain respondent's determination with regard to these trips. With respect to the second *330 category, we agree with respondent that the family members accompanied petitioner for personal, not business, reasons. The services provided by Mrs. Pohl were, at best, incidental to petitioner's attendance of seminars and conventions. However, we find that respondent erred, with respect to the following three trips which petitioner took primarily for business purposes, in determining that one half of the cost of renting a car was attributable to Mrs. Pohl's presence: Payment or
Trip
Date
Reimbursement
San Francisco
03/09/79
$ 117.55  Washington, D.C.
11/14/81
185.78  Denver
05/23/81
682.12  The cost of the rental cars would have been the same regardless of Mrs. Pohl's presence, and therefore no part of these expenses is attributable to her. With respect to all other contested travel expenses, however, we sustain respondent's determination. B. Entertainment, Meal Expenses, and Gifts
An entertainment expense which qualifies for a deduction under section 162 may be disallowed under section 274. Section 274(a) provides that no deduction shall be allowed for entertainment expenses unless the taxpayer established that the item is directly related to, or, in the case of an item directly preceding *331 or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), associated with, the active conduct of the taxpayer's trade or business. Section 1.274-2(c)(3), Income Tax Regs., provides that entertainment expenditures are directly related to the active conduct of the taxpayer's trade or business if the following requirements are satisfied: (i) * * * the taxpayer had more than a general expectation of deriving some income or other specific trade or business benefit (other than the goodwill of a person or persons entertained) at some indefinite future time from the making of the expenditure. * * * (ii) During the entertainment period to which the expenditure related, the taxpayer actively engaged in a business meeting, negotiation, discussion, or other bona fide business transaction * * * (iii) * * * the principal character or aspect of the combined business and entertainment to which the expenditure related was the active conduct of the taxpayer's trade or business * * * (iv) The expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer was engaged in the active conduct of trade or business during *332 the entertainment * * *
Finally, the entertainment or gift expense must satisfy the substantiation requirements of section 274(d). Under section 274(d) the taxpayer must adequately substantiate with evidence sufficient to corroborate his own statement the amount of the expense, the date of the expense, the business purpose of the expense, and the business relationship of the person entertained or receiving the gift to the taxpayer. 1. Parties Hosted by Petitioner
Petitioner testified that these parties were attended primarily by physicians, neighbors, and friends who had referred patients to his office. The parties did not follow or precede any substantial or bona fide business discussions. Therefore, the claimed deductions will be disallowed under section 274(a) unless the expenses are directly related to the conduct of petitioner's business. We find that petitioner had only a general expectation that business would benefit from the creation of goodwill from the parties, and therefore sustain respondent's determination with respect to the parties. 2. Parties for Nurses
An expenditure which might generally be considered either for a gift or entertainment is treated as an expenditure *333 for entertainment. Section 1.274-2(b)(1)(iii)(a), Income Tax Regs. Thus, payments and reimbursements for going away parties for nurses at the Kettering Medical Center must satisfy the requirements for entertainment expenses in order to be allowable. While it may have been good public relations for petitioner to sponsor parties and meetings for the nurses, who were not employed by either Far Oaks or ORS, petitioner has not shown that these expenses were directly related to the active conduct of his trade or business, nor has he shown that they followed or preceded any substantial and bona fide business discussions. We therefore sustain respondent's determination with respect to these parties. 3. Country Clubs
Petitioner argues that he joined the Dayton Racquet Club and Dayton Country Club to provide a venue for staff meetings for Far Oaks and to meet and entertain potential sources of referrals. Petitioner offered no evidence, other than his uncorroborated testimony, that the physicians employed by Far Oaks ever held a meeting at one of the clubs. In addition to failing to provide documentary evidence of any such meetings, petitioner failed to testify as to the dates any such meetings *334 were held and any specific expenses which were attributable to such meetings. A deduction for the claimed expenses is therefore disallowed by section 274(d)(2), which requires substantiation of the claimed expenses. We also reject petitioner's second argument. The fact that club members could potentially refer patients to petitioner is insufficient to prove that the expenditures constituted ordinary and necessary business expenses. Randall v. Commissioner, 56 T.C. 869, 874 (1971).We therefore sustain respondent's determination that these expenses are not deductible in excess of the amounts he has allowed. 4. Meals at Local Restaurants
Petitioner was reimbursed for meals at various local restaurants at which he and Mrs. Pohl entertained guests. We agree with respondent's determination that petitioners have failed to meet the substantiation requirements of section 274(d). In addition, we find that the quiet business meal exception under former section 274(e) is inapplicable. Section 274(e) provided that section 274(a) shall not apply to food and beverages furnished to any individual under circumstances which are of a type generally considered to be conducive to a business discussion. *335 However, to avail himself of this exception, the taxpayer must have the food and beverage furnished for the primary purpose of furthering his trade or business, and not primarily for a social or personal purpose. Sec. 1.274-2(f)(2)(i)(c), Income Tax Regs. We find that in the instant case petitioners have failed to prove that the meals at issue were not primarily for social purposes, and therefore sustain respondent's disallowance of these expenses. 5. Other Locally Consumed Meals
Additional payments and reimbursements for locally consumed meals can be grouped into two categories: (1) lunches delivered to petitioner at the hospital; (2) dinners at local restaurants at which petitioners entertained no guests. We agree with respondent that these items represent nondeductible personal expenses. If the expense of a meal is to qualify as a deductible business expense under section 162, the taxpayer must demonstrate that it was different from or in excess of that which would have been made for the taxpayer's personal purposes. Moss v. Commissioner, 80 T.C. 1073, 1077-78 (1983), affd. 758 F.2d 211 (7th Cir. 1985).We have held that a corporation cannot deduct the cost of meals consumed *336 locally by one of its shareholders, and that such costs are constructive dividends to the shareholder. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 171 (1978).The fact that petitioner ate lunch between surgeries, or that petitioners discussed office matters during dinner, does not entitle petitioners to deduct the cost of daily meals. 6. Gifts
Respondent determined that petitioner made gifts of bottles of wine for personal, rather than business, purposes. Petitioner introduced no evidence, other than his uncorroborated testimony, to substantiate his claimed business purpose in making the gifts or the business relationship of the recipients. We find that petitioners have failed to satisfy the requirements of section 274(d) and therefore sustain respondent's determination as to the claimed business gifts. C. Automobile Expenses
Section 162(a) allows a deduction for operating expenses of automobiles used in a trade or business. Sec. 1.162-1(a), Income Tax Regs. To the extent that an automobile provided by a corporate employer is used for personal purposes by a shareholder, however, the shareholder receives constructive dividends. In addition, the corporation may not deduct automobile *337 expenses attributable to personal use. Melvin v. Commissioner,88 T.C. 63, 79 (1987), per curiam 894 F.2d 1072 (9th Cir. 1990). During 1979, 1980, and until March of 1981, Far Oaks paid the expenses of two vans leased on behalf of petitioner. Neither Far Oaks nor petitioner maintained a log to verify any business related use of the vans. During 1981 and 1982, ORS leased a 1981 Mazda for petitioner and a 1981 Cadillac for Mrs. Pohl. Neither ORS nor petitioners maintained a log to verify any business related use of the automobiles. The only evidence introduced by petitioners with respect to this issue was their testimony that they frequently used the automobiles for business purposes. We are not required to accept petitioners' unsubstantiated, self-serving testimony as to business use. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).We find that petitioners have failed to prove that the automobile expenses are deductible in excess of the amounts determined by respondent, and therefore sustain his determination as to automobile expenses, including automobile insurance expenses. See Cobb v. Commissioner, 77 T.C. 1096, 1101 (1981), affd. without *338 published opinion 680 F.2d 1388 (5th Cir. 1982). D. Telephone Charges, Video Equipment, and Film Processing
With respect to the reimbursements for telephone charges, video equipment, and film processing, petitioner failed to introduce any evidence to corroborate his testimony that the expenses were business related. However, his testimony indicated that such evidence was readily available. For example, petitioner testified that the video and still cameras were used almost exclusively to record surgery. Yet petitioner failed to introduce a single video cassette or photograph to support his claim. Because petitioner failed to introduce any evidence to support his testimony, we sustain respondent's determination with respect to the telephone, video, and film processing expenses. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). E. Miscellaneous Reimbursements
Respondent charged petitioner with constructive dividends due to reimbursements for small items such as a parking fine and stamps. Because petitioner failed to introduce any evidence with respect to these items, we sustain respondent's determination with respect to these *339 items, as well as any items not previously discussed.
II. UNREPORTED INTEREST INCOME
Because petitioners introduced no testimony or documentary evidence showing that respondent's determination is incorrect, we uphold his determination as to the unreported interest income. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).
III. INVESTMENT TAX CREDIT ISSUES
A. Equipment Lease
Section 38 allows a credit against tax for investments in certain property in an amount determined under section 46. Section 46(e)(3)(B) provides, in relevant part, that a noncorporate lessor, such as GTC, is entitled to investment tax credit under section 38 with respect to leased property only if: (1) the lease term for the property is less than 50 percent of the useful life of the property, and (2) during the first 12 months after the property is leased, deductions allowable to the lessor solely under section 162 with respect to the lease of the property exceed 15 percent of the rental income from the property. Respondent concedes that deductions allowable under section 162 exceed 15 percent of the rental income from the property, and that therefore the second element of the test is met. The issue before *340 us is whether the lease term for the leased property is less than 50 percent of its useful life. Whether the lease satisfies this requirement is a question of fact, and petitioners bear the burden of proof with respect to this issue. Rule 142(a); Welch v. Helvering, supra.
The duration of a lease is decided based on the realistic contemplation of the parties when the lease was entered into. [2] *341 Owen v. Commissioner, 881 F.2d 832, 834 (9th Cir. 1989), affg. a Memorandum Opinion of this Court; Hokanson v. Commissioner, 730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. If there is a reasonable certainty that the lessee will continue leasing the property beyond the period stated in the lease, the lease term is indefinite. G. W. Van Keppel Co. v. Commissioner, 295 F.2d 767, 770-771 (8th Cir. 1961), affg. a Memorandum Opinion of this Court; Sanders v. Commissioner, T.C. Memo. 1984-511, affd. without published opinion 770 F.2d 174 (11th Cir. 1985). Petitioners argue that the lease terms were noted on a separate document which was appended to the Lease Schedule. This document is not signed, not dated, does not identify either the lessor or the lessee, is not in the form called for by the lease agreement, and is not referred to in the Lease Schedule. Petitioners offered no testimony regarding the incorporation of the document into the lease agreement. Petitioners also failed to explain why the document is not in the form called for by the lease agreement. We do not know when the document was prepared, who prepared it, and whether GTC and ORS have abided by its terms. We note that the equipment was still in use by ORS almost seven years after execution of the lease, which exceeds the lease terms provided in the document. Because petitioners have offered no evidence showing that the document was incorporated into the lease agreement when it was entered into, we do not consider it as limiting the term of the lease. We find that petitioners *342 have failed to carry their burden of proof with respect to the lease terms. Respondent's determination that petitioners are not entitled to the claimed investment tax credit is therefore sustained. B. Investment Tax Credit Pass Through
Section 48(d)(1) provides, with certain limitations, that a lessor may elect with respect to "any new section 38 property" to treat the lessee as having acquired such property. The lessee may thus be entitled to investment tax credit for property owned by the lessor. A building and its structural components do not qualify as section 38 property. Sec. 48(a)(1)(B). Section 1.48-1(e)(2), Income Tax Regs., provides in relevant part: The term "structural components" includes * * * plumbing and plumbing fixtures, such as sinks and bathtubs; electric wiring and lighting fixtures; chimneys; stairs, escalators, and elevators, including all components thereof; sprinkler systems; fire escapes; and other components relating to the operation or maintenance of a building. * * *
Respondent determined that the property which was the subject of the section 48(d)(1) election consists of structural components of a building and therefore does not qualify as new section *343 38 property. Petitioners introduced no testimony or documentary evidence showing that the property identified as "fixtures" on their election form did not consist of structural components. In the absence of such evidence, we uphold respondent's determination that the "fixtures" do not qualify as new section 38 property, and therefore ORS is not entitled to investment tax credit under section 48(d)(1). Decisions will be entered under Rule 155.
Footnotes
*. FYE March 31, 1982↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. But see McNamara v. Commissioner, 827 F.2d 168 (7th Cir. 1987), revg. and remanding a Memorandum Opinion of this Court, holding that the parties' realistic contemplation that a lease may extend beyond its stated term is insufficient to show that there has been a real shifting of all economic risk associated with the leased property from noncorporate lessor to lessee, and hence that the lease is a "sham."